UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>ENVIRONMENTAL PROTECTION CORPORATION,<br>　　　　Defendant. | Case No.: 1:19-cv-00807-LJO-JLT<br>FINDINGS AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT<br>(Doc. 20) |

Plaintiffs seek default judgment (Doc. 20), and the Defendant has not opposed this motion. For the following reasons, the Court recommends the motion for default judgment be **GRANTED**.

## I.　Procedural History

On June 7, 2019, Plaintiffs filed its complaint against the Environmental Protection Corporation. (Doc. 1.) On June 24, 2019, Defendant was personally served through its registered agent, Thomas Johnson, pursuant to Federal Rule of Civil Procedure 4. (Doc. 12.) Defendant failed to file a responsive pleading as required by Federal Rule of Civil Procedure 12(a)(1)(A)(i).

Upon motion by Plaintiffs, the Court entered the Clerk's Certificate of Entry of Default against Defendant on July 22, 2019. (Docs. 15, 16.) On August 21, 2019, Plaintiffs filed the motion now pending before the Court seeking default judgment against Defendant. (Doc. 20.)

## II.　Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is

1

entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Pope v. United States, 323 U.S. 1, 11 (1944); see also Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment." Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. Id. at 1472.

### III. Plaintiffs' Allegations

The Court accepts Plaintiffs' factual assertions as true because default has been entered against Defendant. See Pope, 323 U.S. at 12. Plaintiffs filed the instant action against Defendant on June 7, 2019, under §§ 107(a) and 113(g)(2), 42 U.S.C. §§ 9607(a) and 9613(g)(2), of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA), for cost recovery and declaratory judgment from Defendant for response costs Plaintiffs have incurred and will incur in connection with the investigation and remediation of the EPC Eastside Disposal Facility (EPC Site). Plaintiffs also seek contribution and/or indemnity under Health and Safety Code §§ 25325.5 and 25363(e).

The EPC Site is a landfill located on Round Mountain Road about 15 miles northeast of

Bakersfield in Kern County, California. (Doc. 1 at 3.) The EPC Site operated as a waste disposal facility from approximately 1971 to 1985 and received millions of gallons of wastes, which were land farmed from 1971 to 1979 and, thereafter, disposed of in unlined impoundments. (Doc. 1 at 3.) Plaintiffs allege that the EPC Site is a "facility" within the meaning of 42 U.S.C. § 9601(9). (Doc. 1 at 3.) From 1970 until 1992, during the time of Defendant's ownership of the EPC Site, in addition to daily and routine disposals of hazardous substances, multiple releases of hazardous substances occurred when liquid waste from the unlined surface impoundments was suddenly and accidentally released into the environment. (Doc. 1 at 3-4.) Consequently, Plaintiffs allege, there were and are "releases" and threatened "releases" within the meaning of 42 U.S.C. § 9601(22), and these releases resulted in discharges of "hazardous substances" into the environment within the meaning of 42 U.S.C. § 9601(14). (Doc. 1 at 5.)

The California Department of Toxic Substances Control (DTSC), determined that the EPC Site must be cleaned up, and issued an Imminent and Substantial Endangerment Determination and Consent Order to that effect. (Doc. 1 at 5.) Chevron agreed to take the lead in cleaning up the EPC Site. (Doc. 1 at 5.) On February 1, 2008, DTSC approved the Remedial Action Plan for the EPC Site (RAP). (Doc. 1 at 5.) Since that time, response efforts at the EPC Site have been substantial and Chevron has conducted multiple removal actions to prepare the EPC Site for closure. (Doc. 1 at 5.) On March 26, 2019, the DTSC concurred with proposed modifications to the RAP that would permit closure of impoundments at the EPC Site through installation of a structured geomembrane cap. (Doc. 1 at 5.) Plaintiffs allege that, as a result, Chevron has taken "response" actions at the EPC Site, within the meaning of 42 U.S.C. § 9601(25), and has incurred reasonable and necessary costs consistent with the National Contingency Plan in connection with taking those "response" actions. (Doc. 1 at 5.)

**IV.     Discussion and Analysis**

Applying the factors articulated by the Ninth Circuit in Eitel, the Court finds the factors weigh in favor of granting Plaintiffs' motion for default judgment.

A.     Prejudice to Plaintiffs

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. See Pepsico, Inc., 238 F. Supp. 2d at 1177. Generally, where default has been entered against

a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiffs would be prejudiced if default judgment is not granted.

B.  Merits of Plaintiffs' claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiffs' substantive claims and the sufficiency of the complaint together. See J & J Sports Productions v. Hernandez, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." Pepsico, Inc., 238 F.Supp.2d at 1175 (citing Kloepping v. Fireman's Fund, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

CERCLA imposes liability for the cleanup of sites where there is a release or threatened release of hazardous substances into the environment. For a private party to recover cleanup costs under 42 U.S.C. § 9607(a), the plaintiff must make a prima facie showing that (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the [National Contingency Plan]"; and (4) the defendants are in one of four classes of persons subject to liability under § 9607(a). Carson Harbor Vill., Ltd. v. Cnty. of Los Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006).

*1.  "Facility"*

CERCLA defines the term "facility" as, in relevant part, "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). Plaintiffs contend that the EPC Site is a landfill located in Kern County, California and operated as a waste disposal facility from approximately 1971 to 1985. (Doc. 1 at 3; Doc. 20 at 13-14.) Plaintiffs allege that it received millions of gallons of wastes, which were land farmed from 1971 to 1979 and, thereafter, disposed of in unlined impoundments. (Doc. 1 at 3; Doc. 20 at 13-14.) Accordingly, the Site is a facility under § 9601(9). See 3550 Stevens Creek Assocs. v. Barclays Bank of California, 915 F.2d 1355, 1360 n.10 (9th Cir. 1990) ("[T]he term facility has been broadly construed by the courts, such that in order to show that an area is a facility, the plaintiff need only

show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there.")

### 2. *"Release" or "Threatened Release"*

For CERCLA liability to be imposed, there must be a "release" or "threatened release" of a hazardous substance from the facility into the environment. See § 9607(a)(4). CERCLA defines a "release," with certain exceptions not relevant here, as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22). As alleged in the complaint with examples, from 1970 until 1992, during the time of Defendant's ownership and operation of the EPC Site, in addition to daily and routine disposals of hazardous substances, multiple releases of hazardous substances occurred when liquid waste from the unlined surface impoundments was suddenly and accidentally released into the environment. (Doc. 1 at 3-4; Doc. 20 at 14.)

### 3. *Consistency with the National Contingency Plan*

To recover, Plaintiffs must show their remedial action costs were necessary and consistent with the National Contingency Plan ("NCP"). 42 U.S.C. § 9607(a)(3)(B); Carson Harbor, 433 F.3d at 1265 ("Private parties have the burden of proving that cleanup costs associated with remedial actions are consistent with the National Contingency Plan to recover those cleanup costs under CERCLA."). Costs are "necessary" under the NCP when the remedy is cost-effective and the response cost is tied to the actual cleanup of hazardous releases. 40 C.F.R. § 300.430(f)(1)(ii)(D); Young v. United States, 394 F.3d 858, 863 (10th Cir. 2005) ("[R]ecognized costs cannot be deemed 'necessary' to the containment and cleanup of hazardous releases absent some nexus between the alleged response cost and an actual effort to respond to environmental contamination.") (collecting cases). A remedial action is "cost-effective if its costs are proportional to its overall effectiveness." 40 C.F.R. § 300.430(f)(1)(ii)(D). Overall effectiveness is measured by evaluating the "long-term effectiveness and permanence, reduction of toxicity, mobility, or volume through treatment, and short-term effectiveness" of the remedy. Id. "By requiring a cost-effective response, the [NCP] does not mandate the cheapest possible response. Instead, courts have held that more expensive options were cost-effective when the added expense bought additional environmental benefit." AmeriPride Servs., Inc. v.

Valley Indus. Serv., Inc., 2011 U.S. Dist. LEXIS 55634, 2011 WL 1833179, at *16 (E.D. Cal. May 12, 2011) (citing Franklin Cnty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 546 (6th Cir. 2001)).

Plaintiffs allege that in the interest of an expeditious cleanup, Plaintiffs agreed to take the lead in cleaning up the EPC Site. (Doc. 20 at 15.) On February 1, 2008, the California Department of Toxic Substances Control (DTSC) approved the Remedial Action Plan for the EPC Site (RAP). (Doc. 1 at 5; Doc. 20 at 15.) However, the RAP could not be implemented and construction of it was never begun. (Doc. 20 at 15.) Since that time, Plaintiffs contend that response efforts at the EPC Site have been substantial, and Plaintiffs have conducted multiple removal actions to prepare the EPC Site for closure. (Doc. 1 at 5; Doc. 20 at 15-16.) On March 16, 2019, DTSC concurred with proposed modification of the RAP that would permit closure of the impoundments at the EPC Site through installation of a structured geomembrane cap. (Doc. 1 at 5; Doc. 20 at 16.) Plaintiffs allege they have taken "response" actions at the EPC Site, within the meaning of 42 U.S.C. § 9601(25), and have incurred reasonable and necessary costs consistent with the National Contingency Plan in connection with taking those response actions. (Doc. 1 at 5; Doc. 20 at 16.)

### *4.     "Covered Person"*

The last element for imposition of CERCLA liability requires a showing that the party is a "covered person" under § 9607(a). Section 9607(a) defines a "covered person" as:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . .

42 U.S.C. § 9607(a).

The complaint alleges that the Defendant owned the EPC Site and operated it at the time of disposal of hazardous substances within the meaning of 42 U.S.C. § 9607(a). (Doc. 1 at 3; Doc. 20 at 15.) As such, the Defendant is a "covered person" pursuant to Section 9607(a).

C.   Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, Inc., 238 F.Supp.2d at 1176. When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. See Eitel, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

Plaintiffs have submitted evidence that to remediate the EPC Site, the costs will be $18,147,595.24. (Doc. 20 at 17-20; Doc. 20-1.) This is a significant sum of money. Plaintiffs allege that this amount represents all past and future response costs over the next thirty years, $30,944,649.41, minus settlement recoveries, $7,291,680.61, the present value of the trust, estimated in the amount of $5,300,000.00, and trust reimbursements to date, $205,372.86. (Doc. 20 at 19-20; Doc. 20-1 at 5.) Despite the size of the award sought, there is no evidence showing that the cost of remediation and ongoing environmental monitoring is in dispute. Thus, this factor weighs slightly in favor of entry of default judgment.

D.   Possibility of dispute concerning material facts

There is no evidence of a genuine issue of material fact because the Court accepts the factual allegations in the complaint as true. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). Notably, the Defendant has submitted nothing to contradict them.

The plaintiffs served the Defendant on June 24, 2019, and the Defendant was given ample opportunity to respond to the complaint and to participate in the proceedings. After Plaintiffs moved for default judgment, Defendant still failed to respond. Accordingly, this factor weighs in favor of granting default judgment.

E.   Whether default was due to excusable neglect

The sixth Eitel factor examines whether the defendant's failure to respond to the complaint was

the result of excusable neglect. Eitel, 782 F.2d at 1471-72. Plaintiffs properly served Defendant with the summons and complaint, yet Defendant made no appearance in this matter and failed to respond to the present motion. There is no suggestion that this failure due to excusable neglect. See Shanghai Automation Instr. Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor also weighs in favor of entry of default judgment because Defendant has failed to make any appearance in this case.

F.     Policy favoring decisions on the merits

The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. Eitel, 782 F.2d at 1472. Nonetheless, where a defendant fails to answer the complaint, a decision on the merits is "impractical, if not impossible." Elektra Ent. Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted). Thus, given Defendant's failure to appear or respond in any way, this factor does not preclude an entry of default judgment. Id., at 393.

**V.     Findings and Recommendations**

Based on the foregoing analysis, the Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. See Aldabe, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1.     Plaintiffs' motion for default judgment be **GRANTED** (Doc. 20); and

2.     Plaintiffs be **AWARDED** cost recovery in the amount of $18,147,595.24.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///
///
///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 13, 2019**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE